IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


DUC NGOC HUYNH,                          )
                                         )
        Petitioner,                      )
                                         ) CIVIL ACTION NO. 08-00297-CG
vs.                                      ) CRIMINAL NO. 06-00041-CG-B
                                         )
UNITED STATES OF AMERICA,                )
                                         )
        Respondent.                      )


## REPORT AND RECOMMENDATION

Petitioner Duc Ngoc Huynh, a federal inmate proceeding *pro se,* has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 41).  This action has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8 of the Rules Governing Section 2255 Cases. This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 631(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1]  Because the record is adequate to dispose of this

---

[1] The Honorable United States District Judge Callie V.S. Granade presided over the trial of this case and imposed the challenged sentence. Judge Granade referred this matter to the undersigned Magistrate Judge for entry of a Report and Recommendation. The undersigned has reviewed the Petitioner's motion and related documents, the transcripts of the trial and
(Continued)

matter, no evidentiary hearing is required.[2] Having carefully reviewed the record, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 41) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Duc Ngoc Huynh.

## I.   FINDINGS OF FACT

On March 31, 2006, Huynh was indicted for (1) conspiracy to possess with intent to distribute more than 11,350 units of Methylenedioxymethamphetamine (MDMA), commonly known as Ecstasy, in violation of 21 U.S.C. § 841(a)(1) (Count One); (2) possession with intent to distribute 509 tablets of MDMA in violation of 21 U.S.C. § 841(a)(1) (Count Two); (3) use and possession of a firearm during and in relation to a drug trafficking crime in

---

sentencing hearing, and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade. Based upon that review, the undersigned makes the following report and recommendation.

[2] The undersigned finds that an evidentiary hearing would not further the interests of justice or comport with the considerations of judicial economy. Indeed, no evidentiary hearing is required where the petitioner's claim is "affirmatively contradicted by the record," is otherwise capable of resolution based on the existing record, or is "patently frivolous" for some other reason. See Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002); Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983).

violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); and (4) forfeiture of property (Count Four). (Doc. 1). Huynh was at all times relevant represented by retained counsel, Dennis Knizely. (Doc. 7).

On June 26, 2006, Huynh appeared with counsel before Judge Granade and entered a plea of guilty to Counts one and two of the indictment. (Doc. 15). Huynh's plea was accepted, and he was found guilty as charged. (Id.) Subsequent thereto, Huynh, on July 5, 2006, appeared with counsel before Judge Granade and plead guilty to Count three of the indictment. (Doc. 17). Huynh's plea was accepted, and he was found guilty as charged. (Id.) A sentencing hearing was conducted on May 17-18, 2007. (Docs., 37, 45). The Court sentenced Huynh to a term of 211 months imprisonment, which consisted of 151 months each as to Counts one and two, to be served concurrently, and a mandatory 60 months as to Count three, to be served consecutive to the 151 months. (Id.) The Court recommended that Huynh be imprisoned at an institution where residential, comprehensive substance abuse treatment is available. The Court also ordered that, upon release from incarceration, Huynh be placed on supervised release for three years as to Counts one and two and five years as to Count three, to be served concurrently, for a total of five years of supervised release. The Court further ordered that Huynh be

3

delivered to immigration officials for deportation after release from imprisonment. (Docs. 37, Doc. 45 at 20-21). The record does not reflect and Huynh does not allege that he appealed his case to the Eleventh Circuit Court of Appeals.[3]

On May 27, 2008, Huynh filed a motion seeking an extension of time to file a § 2255 petition, appointment of counsel, and a waiver of costs associated with the filing of a § 2255 petition. (Doc. 39). The Court denied Huynh's extension request and noted that an extension was not appropriate where no case or controversy was pending before the Court. (Doc. 40). The Court also denied Huynh's request for counsel as there was not pending before the court a habeas petition which required an evidentiary hearing. The Court also denied as moot Huynh's request to waive fees because there are no fees associated with the filing of a § 2255 petition. (Id.)

On May 27, 2008,[4] Huynh filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

---

[3] In his motion, Huynh asserts that his counsel did not file a proper appeal; however he has not developed this argument nor advanced any facts in support of this contention. Thus, the argument is deemed abandoned.

[4] Huynh's motion was actually received by the Clerk's Office on June 2, 2008; however, pursuant to the mailbox rule, Huynh's motion is deemed filed the day that he signed it and delivered it to prison officials for mailing. See Houston v. Lack, 487 U.S.
(Continued)

(Doc. 41). Huynh alleges that his trial counsel rendered ineffective assistance because counsel 1) failed to inform him of any "cooperation deadline" in order to receive a third point deduction for acceptance of responsibility and 2) failed to request a sentence reduction due to the fact that he was not a United States citizen. Huynh also requests that, in the event he is not deported to Vietnam upon the completion of his sentence, the Court order the Bureau of Prisons ("BOP") to permit him to participate in programs available to U.S. citizens, such as drug treatment and halfway house programs. Huynh also requests additional documentation, including transcripts and a copy of his indictment, "[i]n order to perfect and preserve" his rights. (Doc. 41).

The Government filed a Response in Opposition to Huynh's petition on September 17, 2008 (Doc. 47). In its response, the Government argues that the grounds asserted by Huynh are not cognizable, are moot, and are frivolous. (Id.) Huynh was permitted an opportunity to submit a reply to the Government's response; however, no such reply has been filed to date.

## II. **HABEAS STANDARD**

---

266, 271-72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Adams v. United States, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

Habeas relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).[5]

In general, claims not raised on direct appeal may not be considered on collateral review. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). A meritorious claim of ineffective assistance of counsel can constitute cause. U.S. v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

## III. **ANALYSIS**

### A. **Claims of Ineffective Assistance of Counsel**

As noted supra, Huynh raises two claims of ineffective assistance of counsel. (Doc. 41). In order to establish a claim of ineffective assistance of counsel, a petitioner is required to establish two things: "(1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant." Gordon v. United States, 518 F.3d 1291, 1297 (11th Cir. 2008)

(quoting _Strickland v. Washington_, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." _Cross_, 893 F.2d at 1290; _See also Gallo-Chamorro v. United States_, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms").

"There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take." _Gordon_, 518 F.3d at 1301 (citations omitted); _See also Dingle v. Sec'y Dep't of Corr._, 480 F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment"). The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial." _Stewart v. Sec'y Dep't of Corr._, 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." <u>Stewart</u>, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." <u>Cross</u>, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." <u>Gallo-Chamorro</u>, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Cross</u>, 893 F.2d at 1292 (citation omitted). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Davis v. Terry</u>, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy both prongs of the <u>Strickland</u> test. <u>Butcher v. U.S.</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been."). Consequently, the court need not "address both components of the inquiry if the [petitioner] makes an

9

insufficient showing on one." 466 U.S. at 697; <u>Oats v. Singletary</u>, 141 F.3d 1018, 1023 (11th Cir. 1998) (courts "are free to dispose of ineffectiveness claims on either of its two grounds"); <u>Duren v. Hopper</u>, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong.").

Furthermore, "[c]onclusory allegations of ineffective assistance are insufficient." <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotes omitted). In addition, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994).

### 1. <u>Claim 1</u>

In his first claim of ineffective assistance of counsel, Huynh alleges that his counsel failed to inform him of a "cooperation deadline" that he was required to meet in order to receive an additional point deduction for acceptance of responsibility under § 3E1.1(b)[6] of the sentencing guidelines.

---

[6] U.S.S.G. § 3E1.1 of the sentencing guidelines provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(Continued)

10

Huynh contends that had he been aware of this deadline, "he would have had the option to cooperate sooner so as to secure this point." (Doc. 41 at 5). The Government, however, maintains that no specific deadline existed by which Huynh had to plead guilty, that he was properly denied an additional point for acceptance of responsibility because he forced the Government to expend valuable resources preparing for trial, and that Huynh cannot show that the denial of the additional point affected his sentence. (Doc. 47).

Under U.S.S.G. § 3E1.1(a), a defendant who clearly demonstrates acceptance of responsibility is entitled to have his offense level decreased by 2 levels. Also, U.S.S.G § 3E1.1(b) provides that an additional level of reduction for acceptance of

---

> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

responsibility is warranted where "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." § 3E1.1(b); See also United States v. Cunningham, 322 Fed. Appx. 927, 930 (11th Cir. 2009); United States v. Smith, 422 F.3d 715, 726 (8th Cir. 2005); United States v. Hyde, 135 Fed. Appx. 302, 305 n.1 (11th Cir. 2005) (rejecting defendant's argument that he was entitled to a reduction for acceptance of responsibility because he waited until the morning of the trial to plead guilty and he was uncooperative with the probation officer regarding his financial status, which related to the restitution required by the conduct).

As a threshold matter, the undersigned finds that the Government is correct that U.S.S.G. § 3E1.1 does not provide a "cooperation deadline" by which a defendant must plea in order to avail himself of U.S.S.G. § 3E1.1's 3 point reduction for acceptance of responsibility. Thus, Huynh's counsel was not ineffective for not advising him of a deadline that did not exist. Additionally, the record is undisputed that Huynh plead guilty to Counts one and two shortly following the pretrial

conference, and plead guilty to Count three after the Government had been put to the task of selecting the jury. As a result, Huynh received a 2 point reduction for acceptance of responsibility. While Huynh contends that he would have explored his options and may have plead to Count three earlier had he known of a "cooperation deadline", he has not alleged, let alone demonstrated, that he would have in fact pled earlier to all three Counts had he been advised that by not doing so, he was jeopardizing his potential for receiving the full 3 point reduction. Moreover, even if Huynh had pled guilty to all three counts before jury selection, there is no guarantee that the Government would have agreed to the full 3 point reduction. The Government has broad discretion in filing a motion for an additional level of reduction. See United States v. Gunn, 215 Fed. Appx. 785, 791 (11th Cir. 2007)( Absent an allegation of an unconstitutional motive, the Court will not second-guess the prosecutor's decision to decline to seek an additional one-level reduction pursuant to § 3E1.1(b); § 3E1.1, cmt. 3 ("A defendant who enters a guilty plea is not entitled to an adjustment...as a matter of right.").

Finally, while Huynh contends that the additional point reduction for acceptance of responsibility would have yielded him a more favorable sentence, the record reflects otherwise. At

Huynh's sentencing, his adjusted base offense level was calculated to be 36, which, when coupled with a criminal history category of I, yielded a guideline range of 188-235 months for Counts one and two.[7] Had Huynh received the additional point for reduction of acceptance of responsibility, his offense level would have been 35, and when coupled with his criminal history category of I, it would have yielded a guideline range of 168-210 months for Counts one and two. However, Huynh's defense counsel was able to negotiate a deal with the Government whereby Huynh dropped his request for an additional point reduction for acceptance of responsibility, and in return, the Government dropped its request for an enhancement based on Huynh's alleged role as a leader or organizer, and further agreed not to object to defense counsel's request that Huynh be sentenced at the low end of level 34, which was below the applicable sentencing range. With a criminal history category of I, level 34 yields a guideline range of 151-188 months for Counts one and two.

Defense counsel then successfully argued, with no objection from the Government, that Huynh should be sentenced at the low end of level 34. As noted supra, Huynh received a sentence of 151 months each for Counts one and two, to be served

---

[7] See United States Sentencing Manual, Sentencing Table.

concurrently, and 60 months for Count three, which was to be served consecutively, for a total of 211 months. Thus, based on defense counsel's efforts, Huynh actually received a sentence that was at least 17 months less than the one he would have received had defense counsel merely pushed for the additional point reduction for acceptance of responsibility. Accordingly, Huynh cannot establish that his counsel's efforts in negotiating a more favorable sentence fell below the "objective" standard of reasonable performance, or that he was prejudiced thereby. See Strickland, 466 U.S. 668, 687 (1984) (finding that to prevail on an ineffective-assistance claim, a defendant must demonstrate that his counsel's performance was both deficient and prejudicial). Thus, this claim of ineffective assistance of counsel is due to be denied.

    2. <u>Claim 2</u>

    In his second claim, Huynh asserts that his counsel at sentencing unreasonably failed to move the Court for a reduction in sentence based on his status as a non-citizen and deportable alien and due to the resulting collateral consequences of his alienage on his imprisonment.[8] Huynh asserts that the sentence

---

[8] From a review of the Presentence Investigation Report, Huynh is a Vietnamese citizen, and may be subject to removal
(Continued)

reduction would compensate for "unwarranted sentence disparities among [non-citizen] defendants with similar records [as citizen defendants] who have been found guilty of similar conduct," such as, according to Huynh, being housed in higher security prisons, ineligibility for placement in halfway houses, and the inability to participate in drug and alcohol treatment programs. (Doc. 41 at 6). The Government argues that Huynh's allegation is conclusory and not supportable by law. (Doc. 47).

The Eleventh Circuit has determined that a defendant's alien status does not warrant a downward reduction from the sentencing guidelines,[9] see United States v. Canpaz, 276 Fed. Appx. 878, 881 (11th Cir. 2007); United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996) (overruled on other grounds); United States v.

─────────────────────

proceedings based upon his conviction. (Doc. 22-2 at 2, 11, Recommendation).

[9] Although some courts have determined that a defendant's alien status might form the basis for a downward departure in extraordinary cases, neither a non-citizen's ineligibility for prison programs nor his deportability are in themselves sufficient grounds for downward departure. See United States v. Macedo, 406 F.3d 778, 794 (7th Cir. 2005); United States v. Maung, 320 F.3d 1305, 1308 (11th Cir. 2003); United States v. Lopez-Salas, 266 F.3d 842, 846-51 (8th Cir. 2001); United States v. Cubillos, 91 F.3d 1342, 1345 (9th Cir. 1996) (although court may consider alienage, "ineligibility for community placement" is an insufficient basis for downward departure); United States v. Nnanna, 7 F.3d 420, 422 (5th Cir. 1993); United States v. Restrepo, 999 F.2d 640, 644-47 (2d Cir. 1993).

Campbell, 181 F.3d 1263 (11th Cir. 1999), and has previously rejected arguments similar to Huynh's.  In doing so, the Court has observed that "we are not aware of any case in which we have 'upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien.'" United States v. Telles-Milton, 2009 U.S. App. LEXIS 21698, 2009 WL 3138861 (11th Cir. 2009) (quoting Maung, 320 F.3d 1305, 1308 (11th Cir. 2003)). See also United States v. Reid, 152 Fed. Appx. 884 (11th Cir. 2005); Maung, 320 F.3d at 1309 ("the fact a defendant's status as an alien renders him ineligible to serve any part of his sentence in a halfway house [or minimum security prison] does not justify a downward departure.").

Further, Huynh makes a purely conclusory legal assertion that his ineligibility for minimum security confinement, placement in a drug treatment program, or halfway house amounts to a violation of equal protection. In order to set forth a claim cognizable under the Equal Protection Clause, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986)(per curiam); Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001).  Additionally, to

17

succeed on an equal protection challenge, the petitioner must demonstrate the existence of discriminatory intent; arbitrary action without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. <u>Jones v. White</u>, 992 F. 2d 1548, 1573 (llth Cir. 1993). Mere differential treatment of convicted felons, without more, fails to allege a violation of the Equal Protection Clause. <u>See</u> <u>E & T Reality Company v. Strickland</u>, 830 F.2d 1107, 114 (llth Cir. 1987). Huynh has failed to present any facts which suggest that he had a viable equal protection claim.

Accordingly, Huynh cannot show that his attorney unreasonably failed to argue for a reduction in sentence based on his alienage or that there is a reasonable probability that, but for his counsel's performance, he would have been granted a reduction. <u>See</u> <u>Strickland</u>, 466 U.S. at 688 (failure to raise an argument that was not meritorious does not fall below an "objective standard of reasonableness"); <u>Nguyen Kieu Minh v. United States</u>, 2006 U.S. Dist. LEXIS 97923, *9 n.3 (S.D. Ga. July 7, 2006); <u>United States v. Sera</u>, 267 F.3d 872, 874-75 (8th Cir. 2001) (counsel's failure to move for downward departure based on alienage was not unreasonable). Given clear precedent, there can be little doubt that the sentencing Court could have rejected any argument that Huynh deserved a downward reduction based on his

deportable alien status as such request would have been frivolous and legally unsupportable. Thus, Huynh's second claim does not entitle him to relief under 28 U.S.C. § 2255.

B.   <u>Remaining requests for relief</u>

Next, Huynh requests that in the event he is not deported following the completion of his custodial sentence, that the Court direct the Bureau of Prisons to permit him to participate in programs available to U.S. citizens. He also requests documentation in order to perfect and preserve his § 2255 petition. 28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." A federal prisoner wishing to challenge the validity or constitutionality of his conviction or sentence must do so by way of a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. 28 U.S.C. § 2255; <u>Sawyer v. Holder</u>, 326 F.3d 1363, 1365 (11th Cir. 2003). In contrast, a federal prisoner challenging the

manner, location, or conditions of his sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.[10] Pack v. Yusuff, 218 F.3d 448, 451-51 (5th Cir. 2000); Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998). Presumably, Huynh is arguing that if he is not deported, he will be denied the same opportunities as other inmates due to his status as a deportable alien in violation of his equal protection.[11] Huynh's contention regarding his ability to

---

[10] Arguably, Petitioner could bring his claim in a civil rights complaint. See Bennett v. United States, 2006 U.S. Dist. LEXIS 66409, *10 (S.D. Ga. June 22, 2006). In any event, Petitioner would be required to exhaust his administrative remedies before proceeding. See Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam) (holding that federal prisoner must exhaust administrative remedies in all § 2241 cases); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (noting that exhaustion of administrative remedies is a "precondition" to filing a civil rights complaint in federal court, and inmates must complete the administrative process before initiating suit).

[11] Huynh has offered no evidence that the BOP has excluded him from certain opportunities or is likely to do so because he does not meet the criteria for participation set forth in BOP regulations. As such, Huynh's assertion is purely conclusory. Even if he had provided such evidence, Huynh has not shown the violation of any constitutional right. Specifically, inmates do not have any federal constitutional right to participate in rehabilitative programs. Nor does an inmate have any constitutionally protected interest in a particular housing assignment. See, e.g., McKune v. Lile, 536 U.S. 24, 39, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Meachum v. Fano, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) (no right to
(Continued)

participate in certain programs, so as not to "offend the basic notion of fairness," relates to the execution of his sentence and should be brought pursuant to a petition under § 2241. In other words, the present motion under § 2255 is not the proper procedural vehicle for Huynh to bring the instant claim. Accordingly, Huynh's request fails to state a cognizable claim under § 2255 and is due to be denied.

Lastly, Huynh seeks copies of documents, including transcripts of his guilty plea and sentencing hearings, the plea agreement, and the indictment, "in an effort to perfect and preserve" his rights.[12] (Doc. 41 at 6). Free transcripts can be

---

incarceration at any particular prison). <u>See also</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); <u>Murdock v. Washington</u>, 193 F.3d 510, 513 (7th Cir. 1999) (no protectible liberty or property interest in attending rehabilitation program); <u>Wishon v. Gammon</u>, 978 F.2d 446, 450 (8th Cir. 1992)(no right to educational or vocational opportunities); <u>Canterino v. Wilson</u>, 869 F.2d 948, 952-54 (6th Cir. 1989) (no liberty interest in inmate classification or eligibility for work programs); <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to particular inmate classification or eligibility for rehabilitative programs); <u>Battle v. Anderson</u>, 564 F.2d 388, 403 (10th Cir. 1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); <u>Lyle v. Sivley</u>, 805 F.Supp. 755, 759-60 (D. Ariz. Oct. 29, 1992) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

[12] Huynh references a prior motion, filed May 27, 2008, wherein he sought an extension of time to file a § 2255 petition,
(Continued)

ordered by a district court for persons permitted to sue or appeal *in forma pauperis*. 28 U.S.C. § 753(f). However, these transcripts are not available as a matter of course to an indigent applicant. See United States v. MacCollom, 426 U.S. 317, 325, 96 S. Ct. 2086, 48 L. Ed. 2d 666 (1976). Rather, transcripts may be paid by public funds if the court finds that the "suit . . . is not frivolous and the transcript is needed to decide the issues presented . . . ." 28 U.S.C. § 753(f); MacCollom, 426 U.S. at 325. Petitioners are not required to prove their claims in order to obtain a free transcript, but they must convince a district court that their claims are not frivolous. Id. at 326. In other words, a court will not disburse public funds for transcript requests without a showing of need or without the proffer of specific facts to support a claim of denial of constitutional rights. See Walker v. United States, 424 F.2d 278, 279 (5th Cir. 1970) ("A federal prisoner is not entitled to obtain copies of court records at Government expense for the

_____

appointment of counsel, and a waiver of costs associated with the filing of a § 2255 petition. (Doc. 39). However, in an Order dated May 30, 2008, Huynh's request for an extension of time and for appointment of counsel were denied as he had no § 2255 petition pending at that time, and his request to waive fees was moot because there are no fees associated with filing a § 2255 petition. (Doc. 40).

purpose of searching the record for possible error."). Huynh has not presented any facts which suggest that he is indigent, nor has he proffered any facts which demonstrate a specific need for the requested documents. His conclusory assertion that the documents are needed to preserve his rights falls way short of showing that the transcripts and other documents are needed in order to advance non-frivolous issues. Accordingly, Huynh's request should be denied.

**IV. CERTIFICATE OF APPEALABILTY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability ("COA") in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where, as here, a habeas petition is being denied on the merits of an underlying constitutional claim, a COA should issue

only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000); see also id. at 483-84, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); see Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to Huynh's assertions of ineffective assistance of counsel, reasonable jurists could not debate whether Huynh's § 2255 motion to vacate should be resolved in a different manner or that the Sixth Amendment issues presented are adequate to deserve encouragement to proceed further. The same hold true for Huynh's collateral requests. Accordingly, Huynh is

24

not entitled to a certificate of appealability, and any motion for leave to appeal in forma pauperis should likewise be denied.

**V.   CONCLUSION**

Based on the foregoing reasons, the undersigned Magistrate Judge is of the opinion that Huynh's rights were not violated in this case and that his request to vacate, set aside or correct his sentence should be denied, without an evidentiary hearing, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Duc Ngoc Huynh. Further, the undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability and that any motion for leave to appeal in forma pauperis should likewise be denied. It is so recommended.

The attached sheet contains important information regarding objections to this Report and Recommendation.

DONE this the **17th** day of **February, 2011.**

                    **_____/S/ SONJA F. BIVINS_____**
                    **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. *Objection*. Any party who objects to this recommendation, or anything in it, must, within fourteen days of the date of service of this document, file specific written objections with the Clerk of this Court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[13] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[13] The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  ***Transcript (Applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.